OPINION
Defendant-appellant Jason Taulbee appeals from his conviction and sentence, following a guilty plea, upon one count of Aggravated Robbery, and one count of Attempted Theft of a Firearm. Taulbee contends that the trial court erred by accepting his plea, because it was not knowingly and intelligently made. He further contends that the trial court erred by considering extraneous matters in determining the sentence to impose.
We conclude that the record fails to portray any error in the acceptance of the negotiated guilty plea. We further conclude that the matters recited by the State at the sentencing hearing were proper for the trial court's consideration. Accordingly, the judgment of the trial court is Affirmed.
 I
In May, 1998, Taulbee was arrested and charged with Kidnaping. As a result of the incident for which he was arrested, he was ultimately indicted for Abduction, with a firearm specification, Attempted Theft of a Firearm, and Possession of Criminal Tools. He was also indicted for Aggravated Robbery, with a firearm specification, an offense that allegedly occurred several months prior to the other offenses.
Taulbee entered into a plea bargain with the State, wherein he pled guilty to Aggravated Robbery, without the firearm specification, and also to the Attempted Theft of a Firearm count, in exchange for the dismissal of all the other counts in the indictment. The trial court, following a hearing, accepted Taulbee's plea. Later, the trial court conducted a sentencing hearing. Taulbee was sentenced to seven years for the Aggravated Robbery, and to ten months for the Attempted Theft of a Firearm, to be served consecutively. During the sentencing hearing, the State recited facts that it expected to have been able to prove at the trial of the indictment. Although Taulbee's trial counsel did not formally object, his trial counsel did argue that these matters were conjectural and speculative.
At the conclusion of the sentencing hearing, following the trial court's announcement of the sentence, Taulbee complained that he had expected to receive the minimum sentence. However, he stopped short of contending that he had been promised a minimum sentence, and his trial counsel acknowledged that no promise had been made to Taulbee.
From his conviction and sentence, Taulbee appeals.
 II
Taulbee's First Assignment of Error is as follows:
 IT WAS AN ABUSE OF DISCRETION FOR THE COURT TO ACCEPT APPELLANT'S CHANGE OF PLEAS ENTERED CONTRARY TO LAW AND OHIO AND U.S. CONSTITUTIONAL REQUIREMENTS; SINCE THEY WERE MADE WITHOUT KNOWLEDGE, INVOLUNTARILY, AND NOT IN AN INTELLIGENT FASHION.
Taulbee argues that the trial court erred by accepting his negotiated guilty plea because the record establishes that he was confused and uncertain. He relies principally upon the following exchange:
THE COURT: Is there a bill of particulars filed in this case?
MR. RASTATTER: [representing the State]: Yes, Your Honor.
 MR. MURPHY: [representing Taulbee]: Your Honor, the Count One reads on the 29th day of October, 1997, at approximately 7:45 p.m. in the parking lot of Miller Furniture, 6711 Dayton Road, Enon, Clark County, Ohio, the Defendant robbed Jim Miller at gunpoint with a shotgun. The defendant stole $5,000 from Jim Miller.
That's the allegation alleged in Count One.
THE COURT: Count Three, please.
MR. MURPHY: Here, I'll give it to the Court.
THE COURT: Thank you.
MR. MURPHY: Um-hmm.
THE COURT: Did you understand that, Mr. Taulbee?
DEFENDANT: Yes, sir.
THE COURT: You understand that by pleading guilty you did that.
Do you understand that?
DEFENDANT: Admitting I was involved, yes, sir.
THE COURT: I'm sorry?
DEFENDANT: I'm admitting I was involved, yes, sir.
THE COURT: You were involved.
DEFENDANT: Yes, sir.
 THE COURT: Does the — on the 29th of October, 1997, at about 7:45 p.m. in the parking lot of Miller Furniture, 6711 Dayton Road, Enon, Clark County, Ohio, you robbed Jim Miller at gunpoint with a shotgun and stole $5,000 from him.
Is that what you're admitting having done?
DEFENDANT: Yes, sir.
 THE COURT: All right. Count Three, on the 10th day of May, 1998, it says that you solicited one T.J. Helcl and Dana Walters to break into Buck Creek Carryout at 3001 Mechanicsburg Road, Clark County, Ohio, to steal a firearm.
 Do you understand that's what you're admitting to in this charge?
DEFENDANT: Yes, sir.
The record further reflects that the trial court reviewed the possible penalties pertaining to each charge with Taulbee, determined that he was not under the influence of drugs or alcohol, determined that he had consulted with his attorney concerning the plea bargain, determined that he had not been threatened to induce his plea, determined that no promise had been made to him, other than that the State promised to recommend that a six-month prison sentence be imposed in a different case, upon revocation of his community control sanction, which was done. The trial court determined that Taulbee was satisfied with the advice that he had received from his attorney, that he had signed a written plea agreement, that he had read the agreement, that he had gone over it with his attorney, and that he had understood everything that was in the plea agreement. The trial court then went through each of the constitutional rights that Taulbee would be waiving by pleading guilty.
We have found nothing in the record to portray the error assigned by Taulbee. The trial court did not accept Taulbee's somewhat elliptic statement admitting that he had been "involved" in the first offense, but went over the charge again with Taulbee, and elicited from him an admission that he had committed the offense.
Taulbee portrayed no confusion or uncertainty during the plea hearing. Accordingly, the trial court did not err in accepting his plea. Taulbee never moved to withdraw that plea.
After the trial court announced the sentence to be imposed, at the subsequent sentencing hearing, Taulbee complained that he had expected a lighter sentence. Taulbee did not, however, contend that he had been promised a lighter sentence. The trial court reminded him that he had indicated, at the plea hearing, that no promise had been made to him concerning the sentence. Furthermore, Taulbee's trial counsel acknowledged that Taulbee had not been promised a more lenient sentence.
We conclude that the record does not portray the error assigned. Accordingly, Taulbee's First Assignment of Error is overruled.
 III
Taulbee's Second Assignment of Error is as follows:
 DUE TO AN ABUSE OF DISCRETION ON THE COURT'S PART THE SENTENCES IMPOSED ON APPELLANT WERE EXCESSIVE AND CONTRARY TO LAW.
At the sentencing hearing, the State made the following statement for the record:
 Yes, Your Honor. For the Court to sentence this Defendant, it's important for the Court to understand the criminal course of conduct that this Defendant was engaged in over the last nine months.
 On October 29, 1997, the Defendant robbed Mr. Miller at his furniture store at gunpoint and stole approximately $5,000 from him. About a little over two months after that, the Defendant was arrested by the Clark County Sheriff's Office, driving a stolen car for which he was arrested; and in that car at the time of the arrest was a ski mask and a small caliber handgun. He pled guilty to attempted receiving stolen property as a felony of the fifth degree in that case and was placed on community control sanctions for some period of time. Shortly thereafter is when the Defendant committed the crime of attempted theft of a firearm at the Buck Creek Carryout on Route 4 in Clark County, Ohio.
 Your Honor, the State had evidence, was prepared to present evidence at the trial that shortly before he was arrested on that receiving stolen property case, that he had had conversations with a young man by the name of Nick Knickerbocker; and Nick was prepared to testify that Mr. Taulbee was inquiring of him as to the layout of Mr. Miller's private residence.
 And the reason he targeted Nick Knickerbocker for that information is because Nick Knickerbocker's mother apparently had worked or was still working for Mr. Miller and, through her course of employment there, had occasion at least one time to visit Mr. Miller's home for some kind of a party or get-together, at which Nick Knickerbocker was present; so Nick himself had been to Mr. Miller's home, knew where it was, knew what the layout of the home was, knew a little bit about it; and this Defendant was asking him for information about that.
 And, your Honor, that — that testimony that the Court would have heard from Mr. Knickerbocker would have been corroborated by the fact that located in the Defendant's car were photographs of Mr. Miller's home, his private residence; and it's pretty apparent from the photographs that they're not just photographs — they're not just photographs of the home because it's a nice home, which it is; but they appear to be photographs that would help him to understand the layout of this home so that he could go in and rob it again, rob Mr. Miller again.
 So the point is, Your Honor, he robbed Mr. Miller at gunpoint at his furniture store in Enon, shortly after that he was convicted of receiving stolen property or attempted receiving stolen property, was placed on community control, and while he was on community control, he was planning to rob Mr. Miller again, this time at his private residence. So, Your Honor, the State at this time would certainly request that the Court sentence the Defendant to the Ohio State Penitentiary for a significant period of time.
During his response, Taulbee's counsel made the following statement:
 Your Honor, the State has made several allegations that in my opinion are irrelevant to today's sentencing. The State can speculate all it wants as to the possibility of Mr. Taulbee's actions in the future. They can speculate what those pictures were for, when they were taken, the purpose for them.
 I believe that the Court should focus on the charges that the Defendant has pled guilty to in this case, a robbery charge without a gun specification, attempted theft of a firearm, felony of the first degree, felony of the fifth degree.
Later, the trial court remarked, mistakenly, that Taulbee had participated in the robbery of Miller while Taulbee was on community control. This mistake was cleared up, with the assistance of both counsel. The State did point out, however, that the later of the two offenses for which Taulbee was being sentenced, Attempted Theft of a Firearm, did occur when he was on community control.
The trial court then made the following observations:
 You had committed this robbery. Subsequent to this robbery, you committed another theft offense; and while on community control, you committed another offense. Now, if I add all that up, that adds up to a high risk of recidivism.
DEFENDANT: Yes, sir.
 THE COURT: It also tells me that community control is not a viable resolution to this case.
 The nature of the charge would indicate that you're willing to go a bit higher now with the offenses you're willing to commit. To give you a minimum sentence in this case would be to demean the offense and to put the community at risk.
 You have, through your activities over the last year, sir, shown a lack of care for the rights of the property of others and their safety.
Whereupon, the trial court imposed a sentence of seven years for Aggravated Robbery, and ten months for Attempted Theft of a Firearm, to be served consecutively. Taulbee asserts that the factual matters recited by the State were improper for the trial court's consideration. These matters suggested that, apart from Taulbee's having robbed Miller at Miller's business establishment, Taulbee was planning to rob Miller at his residence. The photographs "casing" Miller's residence also suggest a degree of planning that is not casual.
Taulbee has not cited any authority for the proposition that these matters were not appropriate for the trial court's consideration in deciding what sentence to impose. R.C. 2929.12(A) vests a trial court with "discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A) requires the trial court to consider certain factors relating to the seriousness of the offender's conduct, and "the likelihood of the offender's recidivism." Additionally, the trial court "may consider any other factors that are relevant to achieving those purposes and principles of sentencing."
In its remarks immediately preceding the pronouncement of sentence, the trial court indicated its concern about the likelihood of recidivism. Our reading of R.C. 2929.12 indicates that a trial court is not only permitted to consider any factors bearing upon the likelihood of recidivism, it is encouraged to do so.
We find no error in the trial court's consideration of the facts that the State recited it expected to have been able to prove at a trial, in determining the appropriate sentence in this case. Taulbee's Second Assignment of Error is overruled.
 IV
Both of Taulbee's assignments of error having been overruled, the judgment of the trial court is Affirmed.
YOUNG, J., concurs.